July 29, 2026

**Supreme Court**

No. 2025-223-Appeal.
(PC 23-5833)

(Concurrence begins on Page 23)

Myles Standish Associates, LP, et al.   :

              v.                 :

The City of Providence by and through  :
the City of Providence Board of
Licenses et al.

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Myles Standish Associates, LP, et al.  :

v.  :

The City of Providence by and through  :
the City of Providence Board of
Licenses et al.

Present: Suttell, C.J., Robinson, Lynch Prata, Long, and Flaherty (ret.), JJ.

**O P I N I O N**

**Justice Long, for the Court.**  Myles Standish Associates, LP (Myles Standish or plaintiff), appeals from a judgment of the Superior Court in favor of the defendants, the City of Providence, members of the City of Providence Board of Licenses (the board), and George Potsidis d/b/a Estiatorio Fili, Inc. (Estiatorio) (together, appellees), on the parties' cross-motions for summary judgment.[1]  Before

---

[1] The complaint specifically named as defendants the City of Providence, by and through the City of Providence Board of Licenses, by and through its members named in their official capacity, and the City of Providence by and through its licensing department.

- 1 -

this Court, Myles Standish argues that the trial justice misinterpreted the plain text of article 13, section 4 of the Rhode Island Constitution by concluding that the General Assembly permissibly enacted Public Laws 2023, chapters 387 and 388, codified at G.L. 1956 § 3-7-19(d)(63), (§ 3-7-19(d)(63) or the special act) without local voter approval. For the reasons set forth herein we conclude that the trial justice erred; the special act is void under article 13, section 4 for failure to obtain local voter approval. Accordingly, we vacate the judgment of the Superior Court and remand the case for entry of judgment consistent with this opinion.

## Facts and Procedural History

The material facts giving rise to the parties' cross-motions for summary judgment are undisputed. In July 2022, Estiatorio applied to the board for a "BV liquor license for property it owns located at 225 Waterman Street in the City of Providence * * *." Myles Standish, along with other property owners within a 200-foot radius of 225 Waterman Street, filed an objection to Estiatorio's application

---

There were several additional plaintiffs who participated in this action in the Superior Court along with Myles Standish Associates; however, only Myles Standish appealed the trial justice's decision on the motion for summary judgment, and it is therefore the sole appellant in this Court. Moreover, we observe from the record that Estiatorio, though not a defendant in this case, has, since the filing of plaintiff's verified complaint, been listed as an "Interested Part[y]." For clarity, and because their arguments overlap, we refer to the city, the board, and Estiatorio as "appellees."

- 2 -

pursuant § 3-7-19(a).[2]  As a result, the board was unable to issue a liquor license to Estiatorio for the 225 Waterman Street location.  Estiatorio then lobbied the General Assembly for an amendment to § 3-7-19 "so that the Board could issue a license * * * for Estiatorio's property at 225 Waterman Street."  The General Assembly subsequently enacted the special act and thereby overrode the remonstrance[3] to Estiatorio's license application.  The enactment, codified at § 3-7-19(d)(63), reads:

> "Notwithstanding the provisions of this section, the board of licenses of the city of Providence shall, after application, have the authority to exempt from the provisions of this section any proposed retailer Class B or Class BV licenses intended to be located at 225 Waterman Street, Plat 14, Lot 508 of the applicable city of Providence tax assessment map."

---

[2] General Laws 1956 § 3-7-19(a) provides:

> "Retailers' Class B, C, N and I licenses, and any license provided for in § 3-7-16.8, shall not be issued to authorize the sale of beverages in any building where the owner of the greater part of the land within two hundred feet (200′) of any point of the building files with the body or official having jurisdiction to grant licenses his or her objection to the granting of the license, nor in any building within two hundred feet (200′) of the premises of any public, private, or parochial school or a place of public worship.  In the city of East Providence, retailer's Class A licenses shall not be issued to authorize the sale of beverages in any building within five hundred feet (500′) of the premises of any public, private, or parochial school, or a place of public worship."

[3] Black's Law Dictionary defines a "remonstrance" as a "presentation of reasons for opposition or grievance," or a "formal document stating reasons for opposition or grievance." Black's Law Dictionary 1553 (12th ed. 2024).

The local voters in the City of Providence, which is a "home rule municipality with a local-voter-approved home rule charter[,]" never approved § 3-7-19(d)(63).

Following the passage of § 3-7-19(d)(63), Estiatorio reapplied with defendants for a liquor license for the 225 Waterman Street location. The board held a hearing on Estiatorio's license application, at which Myles Standish and other interested parties appeared through counsel and objected to the board's granting of the license. On October 11, 2023, the board granted Estiatorio's application over Myles Standish's objection.

Thereafter, Myles Standish appealed the granting of the license to the Rhode Island Department of Business Regulation (DBR). Before the DBR, it contended that § 3-7-19(d)(63) "was ineffective to make an exception from the Remonstrance prohibition" in § 3-7-19(a) because the General Assembly's passage of the special act was not approved by local voters pursuant to article 13, section 4 of the Rhode Island Constitution, and it also contended that the board "committed other error of law." On November 1, 2023, the DBR issued a decision stating that the board committed other error, stayed the issuance of the liquor license for the 225 Waterman Street location, and remanded the matter to the board for further proceedings. The DBR's decision did not address Myles Standish's constitutional argument but instead stated that "a determination of unconstitutionality of a statute is not an issue that is properly before an administrative agency."

- 4 -

On November 8, 2023, Myles Standish filed the instant action seeking declaratory and injunctive relief. The plaintiff challenged the constitutionality of § 3-7-19(d)(63), arguing that local voter approval was required because the special act did "not apply alike to all cities and towns, but instead applie[d] only to the City of Providence to benefit Estiatorio and its specific property located at 225 Waterman Street." In its complaint, Myles Standish stated that article 13, section 4 of the Rhode Island Constitution "only gives the General Assembly plenary authority to pass laws" without local voter approval if the legislation applies alike to all cities and towns. Myles Standish contended that, because § 3-7-19(d)(63) allowed "one particular municipal board, *to wit*, the City of Providence Board of Licenses, the authority to override the Remonstrance prohibition for one particular property, *to wit*, 225 Waterman Street in Providence," it could become effective only "upon approval by a majority of the qualified electors of the said city or town voting at a general or special election" in accordance with article 13, section 4 of the Rhode Island Constitution. Consequently, Myles Standish requested a declaration that § 3-7-19(d)(63) was not effective "unless and until it is approved by a majority of local voters of the City of Providence at either a special or general election." It also requested a temporary restraining order and preliminary and permanent injunctive relief enjoining the board from issuing a liquor license for the 225 Waterman Street location in reliance on § 3-7-19(d)(63).

On December 6, 2024, Myles Standish filed a motion for summary judgment, and Estiatorio filed an objection and cross-motion for summary judgment. In its motion, Myles Standish argued that § 3-7-19(d)(63) violated article 13, section 4 of the state constitution because it created a "Providence-specific exemption" from § 3-7-19(a)'s statewide right of remonstrance without local voter approval. Myles Standish argued that that exemption was enacted "in relation to the property, affairs and government" of the City of Providence and, under article 13, section 4, required local voter approval to become effective. Because local approval had not been obtained, however, Myles Standish argued that § 3-7-19(d)(63) violated article 13, section 4 and was void.

In opposition to Myles Standish's motion, and in support of its cross-motion for summary judgment, Estiatorio argued that Myles Standish's complaint required the Superior Court to assess whether § 3-7-19(d)(63) "concerns a local matter * * * or a matter within the General Assembly's reserved powers" over statewide matters. Estiatorio contended that § 3-7-19(d)(63) concerned a matter within the state's reserved powers because, under this Court's precedent, the state maintains sovereignty over, among other things, licensing. When the General Assembly passes a law on a matter of statewide concern, like licensing, Estiatorio argued, "no further analysis is needed because Section 4 of Article XIII is not implicated." In subsequent filings in support of its motion for summary judgment, Estiatorio further

- 6 -

argued that the home rule amendment "*only* requires local voter approval of statutes passed by the General Assembly when they infringe on" the property, affairs or government of a particular city or town, but here § 3-7-19(d)(63) "does not in any way, shape, or form infringe on" the City of Providence.

After a hearing on the cross-motions for summary judgment, the trial justice issued a written decision on May 30, 2025. The trial justice concluded that § 3-7-19(d)(63) involved licensing which is a matter of statewide concern, and, therefore, "approval by a majority of the qualified electors of the said city or town voting at a general or special election" was not required in order for it "to become effective and constitutional." (Quoting R.I. Const., art. 13, § 4.)

In arriving at his conclusion, the trial justice relied on this Court's statement in *Bruckshaw v. Paolino*, 557 A.2d 1221 (R.I. 1989), that "the state maintains sovereignty over the regulation of police affairs, the conduct of business, licensing, education, and elections" and that "[t]hese matters are of statewide concern and are therefore the responsibility of the General Assembly." (Quoting *Bruckshaw*, 557 A.2d at 1223.) The trial justice further noted that this Court reaffirmed that principle in *Amico's Incorporated v. Mattos*, 789 A.2d 899 (R.I. 2002), and he noted that, in that case, the Court further stated: "It is only after licensing authority has been delegated by the Legislature either 'expressly or by necessary implication' that local governing bodies can act." (Quoting *Amico's Incorporated*, 789 A.2d at 904.) He

- 7 -

additionally referenced this Court's statement in *Thompson v. East Greenwich*, 512 A.2d 837 (R.I. 1986), that "the power to regulate business[es] through licensing is an attribute of sovereignty[] and may be exercised by a municipality only upon an express or implied delegation of this power." (Quoting *Thompson*, 512 A.2d at 841.) Relying on these cases, the trial justice concluded that "liquor licenses are completely subject to the exercise of the state's police power," and that therefore passage of § 3-7-19(d)(63) did not necessitate local voter approval. For those reasons, he denied Myles Standish's motion for summary judgment and granted Estiatorio's motion for summary judgment. An order to that effect was entered on June 12, 2025; final judgment entered the same day. Myles Standish filed a notice of appeal on June 27, 2025, later amending such on July 22, 2025.

## Standard of Review

We review *de novo* a trial justice's grant of summary judgment and rulings on questions of law, including constitutional questions. *Gushlaw v. Milner*, 42 A.3d 1245, 1251 (R.I. 2012); *Andrews v. Lombardi*, 233 A.3d 1027, 1033 (R.I. 2020). The question raised on appeal requires us to construe not only the provisions of the special act, but also the plain language of the home rule amendment as a whole. As our standard of review in cases implicating constitutional provisions dictates, this Court's "chief purpose is to give effect to the intent of the framers." *Riley v. Rhode Island Department of Environmental Management*, 941 A.2d 198, 205 (R.I. 2008)

- 8 -

(quoting *In re Advisory Opinion to Governor (Ethics Commission)*, 612 A.2d 1, 7 (R.I. 1992)). In doing so, we "employ the well-established rule of construction that when words in the constitution are free of ambiguity, they must be given their plain, ordinary, and usually accepted meaning." *Id.* (quoting *City of Pawtucket v. Sundlun*, 662 A.2d 40, 45 (R.I. 1995)). "[E]very clause must be given its due force," and "no word or section must be assumed to have been unnecessarily used or needlessly added * * *." *Id.* (quoting *In re Advisory Opinion to the Governor*, 612 A.2d at 7). "[W]e must 'presume the language was carefully weighed and its terms imply a definite meaning.'" *Id.* (quoting *In re Advisory Opinion to the Governor*, 612 A.2d at 7).

**Analysis**

The plaintiff, Myles Standish, presents this Court with a single question on appeal: whether the special act, which "applies only to the Providence Board of Licenses and its authority to grant a liquor license to a single address in the City of Providence," required local voter approval under article 13, section 4, the home rule amendment to the Rhode Island Constitution, prior to becoming effective. We conclude that it did.

When then-Governor Dennis Roberts addressed the 1951 constitutional convention, called to consider various constitutional amendments, including a home rule amendment, he explained the importance of written constitutions in our

democratic system of government: "The American people hold dear to the principle of written constitutions, realizing that it is the basic foundation for government in this great democracy in which we live." *Proceedings of the Limited Constitutional Convention of the State of Rhode Island* 19 (1951) (*Proceedings*). Constitutions, he said, are "the organic law under which our state may live in the future" and "must be restricted to the establishment of a sound structure, to the definition of official responsibility and authority, [and] to the assurance of the fundamental rights and liberties of all the people." *Id.* at 20. Referencing the federal constitution as a model of the "ageless principle of simplicity," Governor Roberts charged the delegates to adopt amendments that contain "broad statements of principle concise in expression with a simplicity that brings clarity of understanding." *Id.*

The amendments adopted as part of that 1951 convention heeded Governor Roberts's call—in particular the home rule amendment, article 13 of the Rhode Island Constitution. The home rule amendment to the state constitution codified the principle that the powers of the General Assembly, however great, are not unlimited. Prior to its adoption, local governments possessed no inherent right of self-government. *City of Providence v. Moulton*, 52 R.I. 236, 243, 160 A. 75, 78 (1932). In June 1951, that changed. As one convention delegate put it, the home rule amendment granted the voters in each city or town "protect[ion] against any dictatorial rule." *Proceedings*, *supra*, at 127. Following a limited constitutional

convention in 1951, at which the home rule amendment passed with the unanimous support of the delegates, the citizens of Rhode Island adopted the provision by an eighty-five percent margin.[4] *Id.* at 131.

Under the home rule amendment, every city and town in the state has the authority to enact a home rule charter. *Bruckshaw*, 557 A.2d at 1223. If a charter is adopted, "the city or town has 'the right of self government in all local matters'" so long as its conduct is "not inconsistent with [the state] Constitution and laws enacted by the general assembly in conformity with the powers reserved to the general assembly." *Id.* (quoting R.I. Const., art. 13, §§ 1, 2).

That delegation of authority to municipal governments over local affairs, however, did "not completely divest the General Assembly of its authority to legislate regarding local matters." *Bruckshaw*, 557 A.2d at 1223. Instead, section 4 of article 13 provided two methods by which the General Assembly may still enact legislation related to local matters:

> "The general assembly shall have the power to act in relation to the property, affairs and government of any city or town by general laws which shall apply alike to all cities and towns, but which shall not affect the form of government of any city or town. The general assembly shall also have the power to act in relation to the property, affairs and government of a particular city or town provided that such legislative action shall become

---

[4] The 1986 Constitutional Convention's overhaul of the Rhode Island Constitution made no substantive changes to the home rule amendment.

effective only upon approval by a majority of the qualified electors of the said city or town voting at a general or special election * * *." R.I. Const., art. 13, § 4.

Article 13, section 4 thus "reserves to the Legislature power over cities and towns" but limits the exercise of that power "to two situations." *In re Advisory Opinion to the House of Representatives*, 628 A.2d 537, 538 (R.I. 1993). In the first situation, the legislature is freely permitted to act "in relation to the property, affairs, and government of any home-rule city or town" provided that "such legislation pertains to all cities and towns alike * * *." *Id.* And, in the second, when "an act * * * pertains to only one home-rule city or town," the legislature is constrained to obtain "the approval of a majority of the qualified electors of [a particular] city or town * * *." *Id.* Article 13, section 4 thus strikes and codifies the delicate balance between state and local authority essential to the preservation of home rule and the reservation of powers in the General Assembly.

Here, we are confronted with a special act that amends § 3-7-19(a). That statute states, in relevant part, that any liquor license "provided for in § 3-7-16.8, shall not be issued to authorize the sale of beverages in any building where the owner of the greater part of the land within two hundred feet (200′) of any point of the building files with the body or official having jurisdiction to grant licenses his or her objection to the granting of the license * * *." Section 3-7-19(a). Section 3-7-19(a) thereby sets forth a statewide prohibition on a municipality's authority to issue a

liquor license where neighboring landowners—in any municipality statewide—file an objection with their municipal licensing official.  Nevertheless, during the 2023 legislative session, at Estiatorio's request, the General Assembly plucked a specific address, 225 Waterman Street, off of the City of Providence tax assessor's map and empowered the board to exempt that property from the objection process described under subsection (a). *See* § 3-7-19(d)(63).

In the Superior Court, and before this Court, Myles Standish argues that the General Assembly's passage of § 3-7-19(d)(63) created a "Providence-specific exemption" from the legislature's generally applicable remonstrance statute, § 3-7-19(a).  Myles Standish agrees that the General Assembly had the authority to pass the general remonstrance statute, § 3-7-19(a), as an exercise of its statewide authority over licensing, but it argues that the "Providence-specific exemption" at issue did not apply alike to all cities or towns and therefore necessitated local voter approval before becoming effective.  It is undisputed that no such vote took place.  Accordingly, Myles Standish requested that the Superior Court, and ultimately this Court, determine that the passage of the special act violated section 4 of the home rule amendment.  In order to establish that § 3-7-19(d)(63) violates the state constitution, Myles Standish bears the burden of proving "beyond a reasonable doubt that the act violates a specific provision of the state constitution * * *." *Moreau v.*

- 13 -

*Flanders*, 15 A.3d 565, 574 (R.I. 2011) (brackets omitted) (quoting *Mackie v. State*, 936 A.2d 588, 595 (R.I. 2007)).

We conclude that Myles Standish has met its burden, and we therefore hold that enactment of § 3-7-19(d)(63) in the absence of local voter approval exceeded the limit that article 13, section 4 places on the "[p]ower of [the] general assembly over cities and towns." R.I. Const., art. 13, § 4; *see Bruckshaw*, 557 A.2d at 1223 (holding that a Providence-specific retirement statute passed by the General Assembly violated section 4 of article 13 because it was not approved by local voters).

The plain meaning of article 13, section 4 makes clear that the special act should not have become effective without local voter approval. *See Sundlun*, 662 A.2d at 45 (explaining that the words of the constitution "must be given their plain, ordinary, and usually accepted meaning"). Section 4 of article 13 restricts the General Assembly from unilaterally enacting a law "relat[ed] to the property, affairs and government of a particular city or town" in the absence of local voter approval. R.I. Const., art. 13, § 4. There can be no question that the special act before us today relates to a particular city because it specifically refers to the "[C]ity of Providence," which adopted a home rule charter in 1980. Section 3-7-19(d)(63); *Bruckshaw*, 557 A.2d at 1222. It relates to the "affairs" of the City of Providence because it requires a municipal agency—the board—to direct its "professional * * * business" toward

- 14 -

the review and adjudication of Estiatorio's application. The American Heritage Dictionary of the English Language 28 (5th ed. 2011). And it relates to the "government" of the City of Providence because it requires an arm of the municipal administration to dedicate scarce city resources to a review of Estiatorio's application—a review that the City of Providence would not otherwise undertake but for the special act. Finally, it is undisputed that local voter approval was not obtained before the special act became effective. Under a plain reading of article 13, section 4, Myles Standish has proven beyond a reasonable doubt that the special act violates an identifiable provision of our constitution, and it is this Court's duty to invalidate it. *Moreau*, 15 A.3d at 574; *see Taylor v. Place*, 4 R.I. 324, 364 (1856).

Our conclusion is supported by our prior decision in *McCarthy v. Johnson*, 574 A.2d 1229 (R.I. 1990), which also concerned a challenge to the constitutionality of acts of the General Assembly that related to a particular city. *McCarthy*, 574 A.2d at 1229-30. There, the plaintiff filed a personal injury action against the City of Newport but failed to provide the city with timely notice of her claim as required under G.L. 1956 § 45-15-9 and sought damages in excess of the statutory tort cap provided in G.L. 1956 § 9-31-3. *Id.* Cognizant of these procedural defects to her claim, the plaintiff "turned to the General Assembly for relief," and it delivered. *Id.* at 1230. The General Assembly passed an act that authorized the plaintiff's suit against the city within three years and increased the tort liability cap to $500,000 for

her claim only. *Id.* at 1229. The General Assembly then passed a second act which amended the prior act to grant the plaintiff extra time in which to provide the city with notice of her claim. *Id.* at 1230. The city subsequently challenged both acts as a violation of the state and federal constitutions. *Id.*

This Court invalided both acts as derogations from the requirements contained in article 13, section 4. *See McCarthy*, 574 A.2d at 1230. The Court held that the two acts were "not general acts applicable to all towns and cities" but instead they "directly affect[ed] a single community * * * by raising the potential liability exposure for injuries sustained by this plaintiff." *Id.* at 1231. The Court therefore held that the acts would affect "the property, affairs and government" of the City of Newport because residents of that community—and only residents of that community—would be forced to expend revenue to address, and potentially satisfy a judgment on, the plaintiff's claim. *Id.*

The Court reached that conclusion notwithstanding the plaintiff's argument that the acts were passed as an exercise of the General Assembly's sovereign authority over the courts. *McCarthy*, 574 A.2d at 1232. This Court unanimously concluded that, even though it could not "be disputed that the General Assembly has power to confer jurisdiction upon the courts * * * [this] case [does not] involve[] a question of jurisdiction. Rather, it involves the validity of legislation directed at *a single home-rule community* which benefits *a single party*." *Id.* (emphases added).

- 16 -

And "[w]here, as in this case, the legislation affects a single home-rule community, *the General Assembly's authority is limited by the terms of article XIII, section 4, of the State Constitution.*" *Id.* (emphasis added).

Likewise, in *In re Advisory Opinion to the House of Representatives*, 628 A.2d 537 (R.I. 1993), this Court opined unanimously that certain proposed legislation would violate article 13, section 4 and the provisions of the Town of Lincoln's home rule charter if it (1) approved new voting districts located within the Town of Lincoln, and (2) removed current office holders from various city committees in only the Town of Lincoln. *Advisory Opinion*, 628 A.2d at 539. In reaching that conclusion, this Court determined that the reapportionment of local voting districts was a matter of municipal rather than statewide concern, notwithstanding its recognition of "the sovereignty of the State in matters of elections, which power is not surrendered by a home-rule charter." *Id.* at 539. This Court explained that, given the local nature of Lincoln's reapportionment plan, were the General Assembly to act in relation to the plan, such act "could become effective only upon a subsequent submission of the scheme to the local voters." *Id.*

It is our opinion that § 3-7-19(d)(63) operates identically to the legislation at issue in each of those cases. As in *McCarthy*, it is "directed at a single home-rule community [and] benefits a single party," and, as in the *Advisory Opinion* case, it deals with a particularly local matter, notwithstanding that we recognize the

- 17 -

sovereignty of the state in matters of statewide concern. *McCarthy*, 574 A.2d at 1232; *Advisory Opinion*, 628 A.2d at 539. That the special act became effective without local voter approval cements its unconstitutionality.

After carefully considering the plain text of the home rule amendment and this Court's prior caselaw, we are persuaded that Myles Standish has satisfied its burden of proving that § 3-7-19(d)(63) "violates an identifiable aspect of the" state constitution. *Sundlun*, 662 A.2d at 60 (quoting *Kennedy v. State*, 654 A.2d 708, 712 (R.I. 1995)). Article 13, section 4's local voter approval provision is a textual limitation on the power of the General Assembly to enact laws related to the "property, affairs and government" of a home-rule community. R.I. Const., art. 13, § 4; *Sundlun*, 662 A.2d at 44 ("The power of the General Assembly is, therefore, plenary and unlimited, save for the textual limitations to that power that are specified in the * * * State constitution[].")."). Section 3-7-19(d)(63) relates to the affairs and government of the City of Providence but was enacted and became effective without local voter approval. Accordingly, it violates the state constitution and is void.

Nevertheless, Estiatorio argues before this Court, as it did before the trial justice, that "when the General Assembly passes a law involving a statewide concern such as licensing * * * Section 4 of Article XIII is not implicated." The appellees' argument is not supported by our caselaw and we reject it for at least three reasons. First, although this Court has held that the General Assembly retains sovereign

authority to enact laws in the area of licensing, *Marro v. General Treasurer of City of Cranston*, 108 R.I. 192, 195, 196 n.5, 273 A.2d 660, 662 & n.5 (1971) (describing "exclusive and undiminished" power of the General Assembly on matters of statewide concern, including licensing), we have never held that that sovereign authority entitles the General Assembly to overlook the requirements of the state constitution when acting pursuant to that authority. We have instead recognized that "[t]he power of the General Assembly is * * * plenary and unlimited, save for the textual limitations to that power that are specified" in the state constitution. *See Sundlun*, 662 A.2d at 44. Indeed, this Court's holding in *McCarthy* makes clear that, even when acting within an area where the General Assembly retains authority, if the General Assembly seeks to act in relation to "a single home-rule community" in order to benefit "a single party * * * the General Assembly's authority is limited by the terms of article XIII, section 4, of the State Constitution." *McCarthy*, 574 A.2d at 1232. Accordingly, the reliance by Estiatorio and the trial justice on our prior pronouncements that licensing is a statewide concern fails to fully give effect to the intent of the framers of the home rule amendment who sought to cabin the power of the General Assembly when acting in relation to a particular city or town. *Riley*, 941 A.2d at 205 (explaining this Court's obligation when interpreting the state constitution to give effect to the intent of the framers).

Second, the admittedly oft-repeated statement that licensing is a statewide concern, upon which appellees rely, emerged from a distinguishable line of cases that primarily concerned challenges to the validity of municipal licensing ordinances under article 13, section 2 of the Rhode Island Constitution. *See Newport Amusement Company v. Maher*, 92 R.I. 51, 54-57, 166 A.2d 216, 217-19 (1960) (invalidating a municipal ordinance as in excess of the power delegated to municipalities under section 2); *State v. Krzak*, 97 R.I. 156, 160, 196 A.2d 417, 419-21 (1964) (same); *Nugent v. City of East Providence*, 103 R.I. 518, 526, 238 A.2d 758, 762-63 (1968). Article 13, section 2 of the Rhode Island Constitution defines and constrains the powers of Rhode Island cities and towns that adopt a charter:

> "Every city and town shall have the power at any time to adopt a charter, amend its charter, enact and amend local laws relating to its property, affairs and government not inconsistent with this Constitution and laws enacted by the general assembly in conformity with the powers reserved to the general assembly." R.I. Const., art. 13, § 2.

Thus, when the home rule amendment conferred upon municipalities the right of self-government, article 13, section 2 limited the exercise of *local* power to the enactment of "local laws," and any ordinance which infringed on a statewide concern—such as licensing—exceeded that delegation of authority. *See, e.g.*, *Newport Amusement Company*, 92 R.I. at 54-57, 166 A.2d at 217-19 (invalidating a Newport ordinance that required payment of a fee for applicants seeking to obtain a license to operate a jukebox because to regulate occupations and businesses by

imposing a licensing fee "is an attribute of sovereignty" and "not an incident of municipal administration").

Article 13, section 2 and the cases interpreting it have little practical effect on our understanding of the limits on the process by which the *General Assembly* enacts or amends laws, however. Instead, article 13, section 4 is the instructive provision for the scope of that power. *See Bruckshaw*, 557 A.2d at 1223. And, as the plain language of that provision makes clear, when the General Assembly seeks to enact a law that applies to all cities and towns equally, it is free to do so. But where, as here, the General Assembly seeks to enact a law related to the property, affairs and government of a specific home rule municipality, local voter approval is required. R.I. Const., art. 13, § 4; *see Marro*, 108 R.I. at 195, 273 A.2d at 662.

Third, even accepting the fact that the General Assembly possesses plenary authority to enact licensing laws that apply statewide, we are not persuaded that § 3-7-19(d)(63) is a licensing statute subject to that plenary authority. Rather, it is a special act related to a particular city that benefits a single party. *See McCarthy*, 574 A.2d at 1232. In cases where we have articulated the General Assembly's statewide authority over licensing, we have been confronted with municipal ordinances that conflict with core attributes of the General Assembly's statewide licensing power. For example, in *Newport Amusement Company*, we invalidated a Newport ordinance that imposed a fee payable to the city in order to obtain a license to operate a jukebox.

- 21 -

*Newport Amusement Company*, 92 R.I. at 54-55, 166 A.2d at 217-18. We concluded that the ordinance exceeded the scope of municipal authority because to regulate occupations and businesses by imposing a licensing fee "is an attribute of sovereignty" and "not an incident of municipal administration * * *." *Id.* at 56, 166 A.2d at 218. Similarly, in *Nugent*, we invalidated a city council resolution related to the regulation and licensing of television antennas because even if the resolution targeted utilities using city streets, the reserved powers of the legislature "to regulate and control by licensing the conduct of business within the state is an exercise of the police power." *Nugent*, 103 R.I. at 520-21, 526, 238 A.2d at 760, 762-63.

By contrast, § 3-7-19(d)(63) does not relate to "an attribute of sovereignty," *Newport Amusement Company*, 92 R.I. at 56, 166 A.2d at 218, the ability of the General Assembly to "control by licensing the conduct of business within the state," *Nugent*, 103 R.I. at 526, 238 A.2d at 763, or any other core licensing power. Instead, as appellees candidly admit, it merely authorizes the board to review Estiatorio's application and determine whether to exempt the property located at 225 Waterman Street from the remonstrance filed pursuant to § 3-7-19(a). Section 3-7-19(d)(63). The special act is thus, at most, a procedural statute that lifts one potential barrier to the ability of Estiatorio to obtain a BV liquor license, but does not actually award the BV liquor license, nor does it concern a core "attribute of sovereignty," like the charging of a fee, or the ability to "control by licensing the conduct of business in

- 22 -

the state." *Newport Amusement Company*, 92 R.I. at 56, 166 A.2d at 218; *Nugent*, 103 R.I. at 526, 238 A.2d at 763. Much of the final decision making as to the license itself remains with the board, which is tasked, under the special act, to complete its review of Estiatorio's application. We therefore conclude that the special act is not a licensing statute and thus not subject to our recognition of the General Assembly's plenary authority over licensing.

Because the General Assembly enacted § 3-7-19(d)(63)—a law related to the affairs and government of the City of Providence—in the absence of local voter approval, we hold that the special act is void under article 13, section 4 of the Rhode Island Constitution.

## Conclusion

For the reasons stated herein, we vacate the judgment of the Superior Court and remand the matter for entry of judgment in favor of the plaintiff.

**Justice Robinson, concurring.** I unreservedly join the opinion of the Court and its judgment remanding this matter for entry of judgment in favor of the plaintiff. However, I am also writing this brief concurring opinion in order to express some supplementary observations of my own concerning this important case without substantively disagreeing with any portion of the Court's opinion.

While the Court has primarily based its comprehensive opinion on the clear provisions of article 13, section 4 of the Rhode Island Constitution,[1] I am convinced that the same result could be reached by focusing exclusively on a unanimous decision of this Court that in my opinion constitutes directly controlling precedent— namely, *McCarthy v. Johnson*, 574 A.2d 1229 (R.I. 1990).[2]

In that opinion, Justice Shea, writing for the Court, held that the General Assembly had violated article 13, section 4 of the Rhode Island Constitution when it enacted "legislation directed at a single home-rule community which benefits a single party." *McCarthy*, 574 A.2d at 1232. I am convinced that the appellees have not succeeded in demonstrating that the *McCarthy* opinion is not squarely "on point" with respect to the instant case. Absent the overruling of that case, which has not

---

[1]     Article 13 of the Rhode Island Constitution is often referred to as "the Home Rule Amendment." *See McCarthy v. Johnson*, 574 A.2d 1229, 1230 (R.I. 1990).
[2]     For the purposes of this concurring opinion, it is not necessary to explain in detail the facts of the *McCarthy* case. Suffice it to say, that at issue in that case was the constitutionality of two acts of the General Assembly (85-H6525 and 87-H6883) that purported to relieve one Michelle McCarthy of two existing statutory criteria with which she was not in compliance and accordingly was barred from bringing suit against the City of Newport in connection with injuries that she had sustained in that city. This Court held both acts to have been unconstitutional under article 13, section 4 because they were neither legislation applicable to all cities and towns nor had they been approved by a majority of the qualified electors of Newport. *See McCarthy*, 574 A.2d at 1229-32.

occurred, it continues to be "good law." That being so, it follows as the night the day that plaintiff should prevail in the instant case.[3]

It is my view that Myles Standish was deprived of its right of remonstrance[4] by virtue of highly specific *ad hoc* legislation that I believe cannot be reconciled with directly controlling precedent. *See McCarthy*, 574 A.2d at 1231-32; *see also In re Advisory Opinion to the House of Representatives*, 628 A.2d 537, 538-40 (R.I. 1993). The amendment at issue in this case (G.L. 1956 § 3-7-19(d)(63)) is extremely

---

[3]     This Court's subsequent decision in *In re Advisory Opinion to the House of Representatives*, 628 A.2d 537 (R.I. 1993), is consistent with the holding in *McCarthy* and is directly supportive of the Court's holding in the instant case. However, in view of the special status of advisory opinions in our jurisprudence, I have thought it best to give primary attention to the facts of *McCarthy* and this Court's opinion regarding same.

    This Court in *Advisory Opinion*, held that "[w]hen an act of the Legislature pertains to only one home-rule city or town, the approval of a majority of the qualified electors of that city or town in a general or special election is necessary." *Advisory Opinion*, 628 A.2d at 538. This Court acknowledged that "the sovereignty of the State in matters of elections" is not a power surrendered by a home-rule charter. *Id.* at 539 (citing *McCarthy*, 574 A.2d at 1229). However, the matter of reapportionment (which was at issue in the *Advisory Opinion* case) does not relate to the procedural aspects of local elections and therefore falls "directly under the characterization *of matters that are to be resolved on a local level pursuant to a home-rule charter*." *Id.* (emphasis added).

[4]     While I decline to use the word "sacred" to characterize the right of remonstrance, it is nevertheless a right of very great importance that has been accorded to the small number of individuals (a statutorily defined group of the immediate neighbors of a proposed development) who might have reason to object to the advent of a particular new liquor-serving establishment in their immediate vicinity.

narrow and benefits just one commercial establishment that wishes to be located in one particular place in the City of Providence. In my view, upholding the constitutionality of that amendment would be inconsistent with the "right of self-government" granted by the Home Rule Amendment to our Constitution. *See McCarthy*, 574 A.2d at 1231 ("The effect of adoption of a home-rule charter is that the city has the right of self-government in *all local matters* so long as the charter is not inconsistent with [the] Constitution and laws enacted by the general assembly in conformity with the powers reserved to the general assembly.") (emphasis added) (internal quotation marks omitted).[5]

In their attempt to distinguish this Court's decision in *McCarthy*, the appellees, in unequivocal language, asserted that the amendment at issue (§ 3-7-19(d)(63)) "does not in any way, shape, or form infringe on the property, affairs or government of the City of Providence." In my view, however, the "affairs" of the City of Providence are adversely affected when citizens, who are the very

---

[5]     I would also note that the instant case is readily distinguishable from *K&W Automotive, LLC v. Town of Barrington*, 224 A.3d 833 (R.I. 2020). *K&W Automotive* dealt with a town's legislating on a matter of statewide concern. *See K&W Automotive, LLC*, 224 A.3d at 839. In contrast, the case at bar involves the General Assembly having looked down from its non-local vantage point in order to legislate on a narrow matter of purely local concern—namely, *where* one particular liquor-serving establishment may be located. *See generally State ex rel. City of Providence v. Auger*, 44 A.3d 1218, 1231 (R.I. 2012).

reason for the existence of said City, are deprived of their statutory right of remonstrance by an *ad hoc* enactment that favors one particular liquor-serving establishment against the wishes of remonstrants whom the appellees have chosen to characterize as "a handful of corporate and individual property owners * * *." It should go without saying, however, that the statutory right of remonstrance was designed to provide protection to such a "handful" of landowners—just as it would at some point provide protection to Estiatorio if it were to find itself in a situation comparable to that of the present plaintiff.

The more I have thought about this case, the more I have come to realize that, in a very real sense, it is actually more about the *location* of one particular liquor-serving establishment than about the *licensing* of businesses in the broad sense of that term. I agree that the establishment of standards governing licensing in general (and the sale of liquor in particular) is a matter of statewide concern, but I adamantly believe that the quite subsidiary issue of precisely *where* a particular liquor-serving establishment might be located is a matter that should be subject to approval at the local level.[6]

---

[6]    *See* Terrence P. Haas, *Constitutional Home Rule in Rhode Island*, 11 Roger Williams L. Rev. 677, 713-14 (2006) ("[T]he court is quite likely to find that regulation of agriculture to prevent pollution of waterways is an area that cannot be effectively regulated without statewide uniformity, while the court is unlikely to find that effective regulation of parking on municipal streets requires a uniform statewide policy.").

I conclude by simply expressing my view that, even though powerful arguments have been advanced as to both sides of the question, the decision reached by this Court in this very challenging case is consistent with the intent of the drafters of the Home Rule Amendment.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Myles Standish Associates, LP, et al. v. The City of Providence by and through the City of Providence Board of Licenses et al. |
| **Case Number** | No. 2025-223-Appeal. (PC 23-5833) |
| **Date Opinion Filed** | July 29, 2026 |
| **Justices** | Suttell, C.J., Robinson, Lynch Prata, Long, and Flaherty (ret.), JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Peter F. Skwirz, Esq. |
| | For Defendants: <br><br> Louis DeSimone, Esq. <br> Joseph A. Keough, Jr. |

SU-CMS-02A (revised November 2022)